IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE: ) <br> ) <br> JACK WARREN HARANG, ) <br> ) <br>   Debtor/Appellant, ) <br> ) <br> Bankruptcy No. 18-24543-L ) <br> BAP No. 21-8010 ) <br> ) <br> ) | Civil No. 2:21-cv-02387-JTF-tmp |

## ORDER DISMISSING DEBTOR'S APPEAL

Before the court is the debtor and Appellant Jack Warren Harang's Appeal from his "Order Denying Debtor's Motion for Preliminary Hearing to Determine Article III Jurisdiction," issued in his underlying bankruptcy case on May 13, 2021. (ECF No. 1-3, 1.) Appellee and creditor Henry Dart elected to proceed with this appeal in district court on June 9, 2021, (ECF No. 1-2, 2), and the appeal was filed before this Court on June 10, 2021, (ECF No. 1). Harang filed a brief in support of the appeal on June 23, 2021. (ECF No. 8.) Dart filed his own brief on July 2, 2021. (ECF No. 10.) The Trustee of the underlying Bankruptcy Case, Bettye Sue Bedwell, filed her own brief on July 7, 2021. (ECF No. 11.) Harang then filed a reply brief on July 19, 2021. (ECF No. 14.) For the reasons below, Harang's Motion for Leave to Appeal is **DENIED**, and his claim **DISMISSED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

The procedural history of the present case is confusing and complicated by the fact that Harang's appeal largely focuses on the substance of a previous order not before the Court.

However, given that that order is a matter of public record, the Court takes judicial notice of that order so that it may present a complete view of present issues.

Harang filed a voluntary Chapter 7 Bankruptcy petition on June 6, 2018 in the Bankruptcy Court for the Western District of Tennessee. *In re Harang*, No. 18-24543-L, 2021 WL 2520189, at *1 (Bankr. W.D. Tenn. May 7, 2021). In this petition, Harang named Dart as a creditor. (ECF No. 1-5, 1.) Dart filed Proof of Claim for Claims 2 and 3 on November 11, 2018, both in the amount of $1,628,696.14 and both based on a final judgment ("the Judgment") Dart secured against Harang in a previous litigation, *Advocate Financial, LLC v. Henry Dart, Attorneys at Law, PC*, conducted in the 22nd Judicial District Court of St. Tammany Parish, Louisiana. (ECF No. 8, 5); (ECF No. 1-5, 17); *In re Harang*, 2019 WL 2520189, at *1.

Roughly two and a half years later, on March 26, 2021, Harang filed an Objection to Claims 2 and 3. (ECF No. 8, 6.) In this objection, Harang alleged that the Judgment was "*coram non judice*," a Latin term he states has "no English equivalent" but which essentially means "fake."[1] (*Id.*) Harang argued that because he had asserted the Judgment was fake, the "Bankruptcy Court was without prerequisite Article III jurisdiction to adjudicate anything about Dart's Claim

---

[1] Harang's explanation of the term is included for context:

> Some members of the bar now oppose use of unfamiliar Latin legal terms, used literally for centuries; this creates need to provide explanation. Speaking of a document that in all of its facial appearance looks like a judgment but, in fact and law, is not a judgment has been described in case law and legal literature by the oxymoron "void ab initio." Through currently in use, this terminology is said to offend some members of the bar. The alternate terminology for the same thing eliminates the oxymoron and the confusion created by all oxymorons, i.e., describing a nonjudgment by the word "judgment." The alternate terminology is labeling the document as "coram non judice." There is no English equivalent, e.g., replacing void ab initio and coram non judice with non-judgment fails to communicate that there has never been one moment in time when the document had even an iota of legal efficacy. The English words "counterfeit" and "fake" convey the essence of what void ab initio and coram non judice mean, but those English words are virtually never used in reference to a document which is coram non judice or void ab initio as a judgment of a court, so, using "fake" or "counterfeit" is not readily interpreted by a hearer as applicable to a document that looks like a judgment of a court but which, in fact and law, is not a judgment of a court.

(ECF No. 8, 6 n.1.)

2 or Dart's Claim 3" unless Dart could prove that it was a valid judgment. (*Id.*) Dart responded to this Objection by arguing that Harang did not have standing to object to the Proof of Claims 2 and 3. *In re Harang*, 2019 WL 2520189, at *1. On May 7, 2021, the Bankruptcy Court entered an Order finding that Harang did not have standing to bring the objection. *Id.*

On May 11, 2021, Harang filed a "Preliminary Hearing Motion", which "differs from Harang's Claim Objection and memorandum in support only in the formatting of the text and the relief requested." (ECF No. 8, 7) (internal citations omitted). Harang's new requested relief was a "preliminary hearing requiring Dart to prove that the Void Judgment, in fact and law, is not *coram non judice*." (*Id.*) The next day, the Bankruptcy Court denied this Motion in an Order as well. The Order is short, and reproduced in full below:

> Before the Court is Debtor's Motion for Preliminary Hearing to Determine Article III Jurisdiction and Memorandum in Support filed by the Debtor's attorney, Larry E. Parrish, four days after the court entered its Order on Standing of Debtor to Object to Claims. In its order, the court held (1) that bankruptcy jurisdiction is present with respect to the Dart claims; (2) that this bankruptcy court has authority to hear and finally determine objections to claims; and (3) the Debtor lacks standing to object to proofs of claim filed in this bankruptcy case. In the present motion, the Debtor asks that the court determine 'whether claimant, Henry Dart ("Mr. Dart"), for failure to present a redressable claim for relief lacks standing essential to this Court having jurisdiction, required by the United States Constitution, Article III, to adjudicate.' A rose by any other name, they say, is still a rose. An objection to a proof of claim under the guise of a Motion to Determine Article III Jurisdiction, is still an objection to claim. The Debtor does not have standing to object to the Dart claims for the reasons stated in the prior order. The Court admonishes Mr. Parrish to refrain from filing frivolous pleadings. Accordingly, the Motion is **DENIED**.

(ECF No. 1-5, 10-11.) Harang appealed this order, which is the subject of the present case. (ECF No. 8, 7.) Harang filed that appeal on June 10, 2021, arguing again that the Bankruptcy Court was obligated to provide a preliminary hearing in order to determine whether the Judgment is real, and consequently to determine its own Article III jurisdiction over the case. (ECF No. 1.)

## II. LEGAL STANDARDS

3

To consider the merits of Harang's appeal, two preliminary steps are necessary. First, the Court must determine whether Harang has standing to appeal the underlying Order, as "standing is a threshold issue that federal appellate courts must consider prior to reaching the merits of an appeal."[2] *In re Pasley*, 603 B.R. 6, 10 (6th Cir. BAP 2019) (citing *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016)). Second, if Harang does indeed have standing to appeal, then the Court must determine whether it may certify that appeal, given that it is interlocutory. An interlocutory appeal may be certified if "(1) the appeal involves a controlling question of law, (2) there is a substantial ground for difference of opinion about the answer, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Somberg*, 31 F.4th 1006, 1008 (6th Cir. 2022) (quoting 28 U.S.C. § 1292(b) (internal quotation marks omitted)); *see also In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). Finally, if the Court certifies the interlocutory appeal, it must review the underlying Order entered by the Bankruptcy Court and determine the merits of Harang's position. However, the Court believes the inquiry must stop early, as Harang does not have standing to appeal the underlying order.

### III. LEGAL ANALYSIS

Standing to appeal a Bankruptcy Court order is "more limited than Article III standing or the prudential requirements associated therewith." *In re LTV Steel Co., Inc.*, 560 F.3d 449, 453 (6th Cir. 2009) (quoting *Harker v. Troutman (In re Troutman Enters., Inc.)*, 286 F.3d 359, 364 (6th Cir. 2002)). In the Sixth Circuit, "only a 'person aggrieved' has standing to appeal a bankruptcy order." *In re Khan*, 544 F. App'x 617, 619 (6th Cir. 2013). "Persons aggrieved" are those with "a financial stake in the bankruptcy court's order" who are "directly and adversely affected pecuniarily by the

---

[2] This doctrine applies where a district court hears appeals from a bankruptcy court, even though a district court is not an "appellate court" in all instances. *In re Trailer Source, Inc.*, 555 F.3d 231, 236 (6th Cir. 2009) ("The [bankruptcy appellate standing] doctrine has been exclusively invoked to limit which parties may initiate *appeals from the bankruptcy court* to the district court of the Bankruptcy Appellate Panel.")

4

order." *In re Lunan*, 523 F. App'x 339, 340 (6th Cir. 2013) (quoting *In re Troutman*, 286 F.3d at 364); *Fid. Bank, Nat'l Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). Chapter 7 debtors like Harang typically do not "have the requisite 'pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor.'" *In re Pasley*, 603 B.R. at 10 (quoting *In re Lunan*, 523 F. App'x at 340). Put another way, "a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *In re Amir*, 436 B.R. 1, 10 (6th Cir. BAP 2010) (quoting *In re San Juan Hotel*, 809 F.2d 151, 154-55 (1st Cir. 1987)). However, where a debtor "can show that a successful appeal will generate assets in excess of liabilities, thus entitling her to a distribution of surplus under 11 U.S.C. § 726(a)(6), then the debtor is a 'person aggrieved' with standing to appeal." *In re Lunan*, 523 F. App'x at 340. The debtor must show that such a surplus is a "reasonable possibility." *In re Amir*, 436 B.R. at 10. The burden throughout is on the party seeking the appeal. *In re Khan*, 544 F. App'x at 619.

Harang has not met his burden to show that he is a party aggrieved. Indeed, he does not address this issue at all, despite Dart raising it. Harang instead focuses exclusively on the merits of his underlying objection to the Bankruptcy Court's Order, which he believes was made without Article III jurisdiction. Ironically, this Court cannot examine his objection until Harang demonstrates that it has jurisdiction over his appeal, a burden he has ignored. Regardless, the Court doubts Harang could have met his burden. The underlying Order denied a motion for a preliminary hearing regarding a claim objection.[3] This does not directly affect Harang in a pecuniary way. Any

---

[3] Harang's continued insistence that this is an Article III standing issue and not a claim objection is unavailing. At best, it is a claim objection premised on alleged failures of Article III standing, failures which stem from the Proof of Claim being fake. But this argument is ultimately still an objection to the validity of a Proof of Claim. If proof is inadequate, fraudulent, etc., then the claim cannot proceed; the court would technically not have jurisdiction over that claim because the claim is nonexistent. Harang's argument is backwards. The Court's lack of Article III jurisdiction would be an ancillary side effect of agreeing with his factual claims regarding the Proof, but Harang must still have standing to bring those factual claims.

possible pecuniary effects would be indirect, as they necessarily stem from 1) Harang's accusations about the Judgment being true, 2) Harang being able to prove that his accusations are true, 3) the Bankruptcy Court dismissing Dart's claim as a result, and 4) Harang showing that dismissing Dart's claims would lead to the reasonable possibility of a surplus in his estate. The Trustee's brief states that "the estate is administratively insolvent; no prepetition creditors would receive any distribution on account of their claims; and, consequently, there is *no possibility* of a surplus of funds in the case given the order of distribution set forth in 11 U.S.C. § 726."[4] (ECF No. 11, 5) (emphasis added). Harang is without standing to bring the present appeal.

Even if Harang could show that he had standing to bring this appeal, the Court could not hear the appeal, due to its interlocutory nature. "Pursuant to 28 U.S.C. § 158(a)(3), a district court may hear an appeal from a bankruptcy court's interlocutory order if the district court grants a party's motion for leave to file such an appeal." *In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 88 (E.D. Mich. 2022). To determine whether to grant leave, district courts "have adopted the standard set forth in 28 U.S.C. § 1292(b), which deals with interlocutory appeals from district courts to courts of appeal." *Id.* (citing *In re Brentwood Golf Club*, 329 B.R. 239, 242 (E.D. Mich. 2005); *In re Ragle*, 395 B.R. 387, 394 (E.D. Ky. 2008)). Under § 1292(b), an interlocutory appeal may be certified if "(1) the appeal involves a controlling question of law, (2) there is a substantial ground for difference of opinion about the answer, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Somberg*, 31 F.4th 1006, 1008 (6th Cir. 2022) (quoting 28 U.S.C. § 1292(b) (internal quotation marks omitted)). The party requesting an

---

[4] The Trustee notes that "[she] has not examined or objected proofs of claim because no purpose would be served in doing so at this stage of the case administration." (ECF No. 11, 5.) The Trustee's brief also expressly reserves the right to later examine Proofs of Claims as statutorily permitted, should a purpose be served. (*Id.* at 6.) Denying Harang's appeal now does not foreclose his underlying objections forever, but merely preserves the discretion of the trustee to bring those objections should they serve the administration of the estate.

interlocutory appeal "has the burden of persuading the Court that exceptional circumstances exist warranting the appeal." *Miller v. Uchendu*, No. 13-cv-02149-SHL-dkv, 2015 WL 7709414, at *2 (W.D. Tenn. Jul. 24, 2015) (citing *Alexander v. Provident Life and Accident Ins. Co.*, 663 F. Supp. 2d 627, 639 (E.D. Tenn. 2009)). "Review under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

To determine whether the Court could grant Harang's motion to appeal, the Court would need to answer the three questions noted above. However, Harang also ignores this standard in his filings. Harang instead states, over and over again, that his challenge to the Bankruptcy Court's Article III jurisdiction made it so that the "law requires that, as a matter of fact, the constitutional (Article III) jurisdiction question be decided first (preliminary)." (ECF No. 14, 6.) However, again, this Court does not have jurisdiction to review the Bankruptcy Court's Order without first determining whether Harang's Appeal can be heard. *Arabian Motors Group W.L.L. v. Ford Motor Co.*, No. 16-cv-13655, 2017 WL 2222552, at *2 (E.D. Mich. May 22, 2017) ("a district court may not certify an order for review under Section 1292(b) unless it 'expressly finds that *all* three' of the 'requirements are met.'") (quoting *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). Harang has not advanced an argument on these lines. Given the Court's finding on standing, any further analysis of the interlocutory appeal factors would be unnecessary dicta, outside of its jurisdiction. For all of the above reasons, Harang's appeal is **DENIED**.

### IV. CONCLUSION

For the reasons above, Harang's Motion for Leave to Appeal is **DENIED**.

**IT IS SO ORDERED** on this the 7th day of October, 2022.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE